IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH NOELL, on behalf of himself and all
others similarly situated,

    Plaintiff,

v.                                         CASE NO.: 8:08CV-00683-JSM-TBM

OCEANS CASINO CRUISES, INC.
d/b/a SUNCRUZ CASINO, INC.,

    Defendant.

**JOINT MOTION FOR ORDER (1) GRANTING CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT ONLY; (2) APPOINTING CLASS REPRESENTATIVE AND CLASS COUNSEL; (3) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT; (4) APPROVING FORM AND MANNER OF NOTICE TO CLASS; (5) SCHEDULING A FINAL FAIRNESS HEARING FOR THE FINAL CONSIDERATION AND APPROVAL OF THE SETTLEMENT; AND (6) FINALLY APPROVING THE SETTLEMENT**

        Plaintiff Joseph Noell ("Plaintiff") and Defendant Oceans Casino Cruises, Inc. d/b/a SunCruz Casino, Inc. (collectively "Defendant"), by and through their respective counsel of record, submit this Joint Motion for an Order (1) Granting Class Certification for Purposes of Settlement Only; (2) Appointing Class Representative and Class Counsel; (3) Preliminarily Approving the Settlement Agreement between Plaintiff, on his own behalf and on behalf of the Class of similarly situated former employees of the Defendant and the Defendant; (4) Approving the Form and Manner of Notice to Class; (5) Scheduling a Final Fairness Hearing for the final consideration and approval of the Settlement; and (6) Finally Approving the Settlement (the "Joint Motion").

        In support of their Joint Motion, the Parties respectfully submit the following:

**Jurisdiction**

1.      This Court has jurisdiction over this Joint Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding and this Joint Motion is proper in this district pursuant to 28 U.S.C. §§ 1408, 1409(a) and 29 U.S.C. § 2104(a)(5).

**Background**

2.      Plaintiff and other similarly situated employees were employed by Defendant until on or about March 25, 2008, when he and approximately 105 employees working for Defendant were terminated by Defendant.

3.      On or about April 9, 2008, Plaintiff by his undersigned Counsel, filed the instant action (the "Complaint") in this Court.  In the Complaint, Plaintiff alleged that he and the similarly situated former employees were entitled to receive sixty days' advance notice of layoff under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§2101 et seq.  (the "WARN Act").  In the Complaint Plaintiff seeks sixty days' pay and benefits (less any voluntary payments provided by Defendant) for himself and the other former employees of Defendant who were laid off on or about March 25, 2008.  If the Plaintiff and the proposed class prevailed on these claims, the Defendant could be liable for as much as $350,000, exclusive of attorneys fees which if this matter went to trial could be as much as $250,000.

4.      Defendant denies that any advance notice was required to be given under the WARN Act.  Moreover, Defendant has asserted other defenses, including that (a) even if a "plant closing" or "mass layoff" had occurred, no notice was required because Defendant was actively seeking business or capital which, if obtained, would have enabled it to avoid or postpone a shutdown and it reasonably and in good faith believed that giving notice would have precluded it

from obtaining the needed capital or business, and (b) Defendant acted in good faith and, accordingly, pursuant to the WARN Act, is entitled to a reduction of any award against it.

5.    After an extensive sharing of information, arguments and supporting authorities, the Parties have negotiated a proposed Settlement Agreement (the "Settlement"), attached hereto as Exhibit A, that, upon approval by the Court, will resolve all issues among the Defendant, the Plaintiff and the other putative class members relating to the WARN Act claims arising from the cessation of the class members' employment.

6.    Under the proposed Settlement, the class which will share in the Settlement will be comprised of all persons who worked at or reported to Defendant's facility and were terminated without cause on or about March 25, 2008, were terminated without cause within 30 days of March 25, 2008, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendant on or about March 25, 2008, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) who do not file a timely request to opt-out of the class (the "Class" or "Class Members").  Class Members are listed on Schedule 1 to the Settlement.  The proposed Class does not include employees who transferred to other facilities.

## Class Certification

7.    Class certification pursuant to Fed. R. Civ. P. 23 requires that each of the four prerequisites for certification, namely Fed. R. Civ. P. 23 (a)(1), (2), (3) and (4) be met and, in addition, that at least one of the conditions set forth in subparts of Fed. R. Civ. P 23(b), namely 23(b)(1)(A), 23(b)(1)(B)(2) or 23(b)(3), be satisfied.  All the prerequisites for class certification are present, as set forth below.

(a) **Numerosity**: The numerosity factor of Fed. R. Civ. P. 23(a)(1) is met because the proposed Class numbers 106 former employees, clearly making joinder of Class Member impracticable.

(b) **Commonality:** The commonality factor of Fed. R.Civ.P. 23(a)(2) is met because there are numerous questions of law or fact common to every member of the Class, namely, (1) whether the Class Members lost their employment as a result of "plant closure" as defined in the WARN Act; (2) whether a sufficient number of employees suffered a "loss of employment" as defined in the WARN Act to trigger an advance notice obligation; (3) whether the Defendant was excused from the 60-day notice requirement under the WARN Act through the "faltering company" exception; and (4) whether the Defendant was obligated to pay the Class Members the wages and benefits they would have earned in the sixty day period following termination.  In short, the Class Members' claims raise identical issues regarding the circumstances surrounding their layoffs and, thus, the alleged violations of the WARN Act.  The only differences in the issues affecting Class Members' circumstances are minor, namely, their rates of pay on the date of their layoff, and these differences do not begin to outweigh the questions of law and fact that are common to every Class Member.

(c) **Typicality**: The typicality factor of Fed. R. Civ. P. 23(a)(3) is met here as "the claims . . . of [Plaintiffs who are] the representative parties [are] typical of the claims . . . of the class."  The Plaintiff has the same claim based on the same facts as the other Class Members.

(d) **Adequacy of Class Representative:** The Plaintiff, who is the proposed Class Representative, has and will diligently prosecute this action, has no conflict of interest with the other Class Members, and has and will continue to diligently prosecute, represent and protect the interests of the Class.  In addition, the Plaintiff has engaged

counsel, namely, Lankenau & Miller LLP[1] and The Gardner Firm, PC,[2] which have, between them, prosecuted in excess of seventy-five (75) WARN actions including at least thirty (30) WARN Class Actions in which one or both have been appointed Class Counsel. Fed. R.Civ.P. 23(a)(4).

8. The proposed Class also meets the requirements of Fed. R.Civ.P. 23(b) (3). The common questions of law and fact detailed above that affect all members of the class predominate over any questions affecting only individual members. A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons:

(a) No Class Member has an interest in individually controlling the prosecution of a separate action under the WARN Act.

(b) No other litigation concerning the WARN Act rights of any Class Member is currently pending to the Parties' knowledge.

(c) Concentrating all potential litigation concerning the WARN Act rights of the Class Members in this Court will avoid a multiplicity of suits, will conserve

---

[1]Stuart J. Miller, a partner in Lankenau & Miller, LLP, is a 1982 graduate of Brooklyn College and a 1987 graduate of Columbia Law School. Since admission to the bar of the State of New York in 1988, Mr. Miller has specialized in litigation. For the past eight years, he has concentrated on representing WARN claimants and has investigated and prosecuted over 50 WARN Act cases. Lankenau & Miller, LLP has been appointed class counsel in at least 30 WARN Act class actions and has never been denied appointment.

[2]Cecil Gardner of The Gardner Firm, PC in Mobile, Alabama, has nearly 40 years experience in labor and employment litigation. He and his partners, Mary Olsen (admitted to practice in 1994) and Vance McCrary (admitted to practice in 2001) have served as class counsel in at least twelve other WARN class actions and have extensive experience in handling matters of this type.

judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all Class Members.

      (d)    Administration of this action as a class action will not be complicated or difficult because the names and addresses of the Class Members and their alleged damages have been established and calculated from the Defendant's records.

9.    For the foregoing reasons, the Parties seek a Court order certifying this case as a Class Action for settlement purposes only as to the WARN Act claims of the Class Members, appointing Lankenau & Miller, LLP and The Gardner Firm, P.C. as Class Counsel and appointing Joseph Noell as the Class Representative.

### The Settlement

10.    The Plaintiff and the Defendant ask the Court to approve the Settlement, for the following reasons:

      (a)    The Settlement reflects the result of arms' length, good faith negotiations over several months.

      (b)    The Settlement reflects the recognition by the Parties that there are significant, complex issues regarding the application of the WARN Act, and the various cases and regulations interpreting the Act to the facts of the case. In this regard, the Plaintiff and the Defendant disagree as to whether the Defendant has any obligation or liability under the WARN Act with respect to the class members' claims. If the Plaintiffs are successful in the litigation, however, they could have a claim against the Defendant for more than $600,000, which would almost certainly be uncollectible.

(c) To avoid extensive, costly litigation over these issues, the Plaintiff and the Defendant, through their respective counsel, engaged in significant negotiations regarding a possible consensual resolution of this litigation.

(d) As a result of the Parties' negotiations, and as fully set forth in the Settlement, the Plaintiff and the Defendant wish to fully and finally compromise, settle and resolve any and all demands, claims, damages and causes of action, present or future, relating to the WARN Act, of the Plaintiff and the other Class Members on the terms and conditions of the Settlement.

(e) Under the proposed Settlement : Defendant shall pay a total sum of $190,000 over eighteen (18) months in monthly installments of $10,555.55 (the "Settlement Fund").  The Settlement Fund, minus (a) the $3,000.00 Service Fee (defined below) paid to the Class Representative and (b) payments attributable to Class Members who opt out (the "Common Fund"), shall be divided pro rata among Class Members who do not opt-out of the Settlement, based on their Maximum Theoretical WARN Claim (as defined below).  Calculations of each employee's pro rata share will be based upon his or her final wage rate as set forth in the Defendant's books and records, as shown below, and will be conclusive in this respect.  The Maximum Theoretical WARN Claim was determined by taking the base weekly rate shown for such employee on the Defendant's books and records and dividing this amount by 7 to come up with a daily rate.  The daily rate was then multiplied by sixty to determine sixty days of WARN pay.  The sixty day payment was reduced by the amount of a two week voluntary payment made to each employee, resulting in the "Maximum Theoretical WARN Claim".  Class Counsel shall receive 33 1/3% of the Settlement Fund minus the Service Fee, plus actual costs of litigation ($5432) before any other deductions. Class counsel may also recover the cost of the administration of the mailing of notices and disbursement checks to Class Members, not to exceed $1000, as an additional cost of litigation from the Common Fund.  Joseph

Noell, the Plaintiff who initited this action on behalf of the putative Class, will receive an additional payment of Three Thousand ($3000) Dollars from the Settlement Fund as compensation for his service in representing the Class (the "Service Fee").  No attorney fees will be deducted from this payment. The Parties agree that Schedule 1  to the Settlement accurately reflects the Parties' best approximation of each Class Members' pro rata share of the Common Fund, before deduction of attorney fees and costs. Class Counsel shall issue IRS 1099 forms to each proposed Class Member at their last known address, according to Defendant's books and records, along with the disbursement check.  In the event of termination or nonapproval, the parties agree that this motion does not constitute a finding or admit the truth of any alleged facts and Defendant specifically maintains that it has not violated any requirement of law cited in this proceeding, that it has a valid defense to each allegation of noncompliance, and that this Settlement, including any proposed payments, and any statements herein are made only for the purpose of compromising and settling this matter economically and amicably and to avoid protracted, expensive, and time consuming litigation.  The parties further agree that should the proposed Settlement not be approved by the Court, none of the representations contained in this Motion or the proposed Settlement shall be admissible against the party making it and none of the parties shall be precluded from raising any argument or defense in any further proceeding in this matter or any other matter relating to the subject of this proceeding.

## The Contents of the Class Notice

11. The Parties submit that the proposed Class Notice, a copy of which is attached hereto as Exhibit "B," meets the requirements of Fed. R. Civ.P. 23(c)(2)B).  That rule, in pertinent part, provides as follows:

> "The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues or defenses
- that a class member may enter an appearance through counsel if the member so desires
- that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3)."

12.     The proposed Class Notice satisfies each of the foregoing requirements.  The Notice states the nature of the action, the Class definition, the Class claims, and the issues and defenses.  The Notice also states that a Class Member may enter an appearance through counsel, may elect to opt-out of the Class, and that the Settlement, when approved, will be binding on all Class Members.  The Notice also sets forth the terms of the proposed Settlement and the right of each Class Member to object to the proposed Settlement.  See Rule 23(e)(4)(A).  The Notice summarizes the nature of the pending WARN Act litigation and the Settlement's essential terms.  The Notice also apprises the Class, among other things, that complete information regarding the Settlement is available upon request from Class Counsel that any Class Member may appear and be heard at the hearing on approval of the Agreement. In addition, the notice informs the Class Members of the request for the approval of attorneys' fees and costs of litigation to Class Counsel.  See Fed.R.Civ.P. 23(h).

**<u>The Manner of Notice</u>**

13.     As to the manner of giving notice, Fed. R. Civ.P. 23(c)(2)B) provides, in pertinent part, as follows:

> "For any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."

14. An individual mailing to each class members' last known address has been held to satisfy the "best notice practicable" test. Eisen v. Carlisle & Jacquelin et al., 417 U.S. 156 (1974) (individual mailings satisfy Rule 23 (c)(2));

15. The Settlement provides that Class Counsel will mail the notice by first class mail, postage prepaid, to the last known address of each of the Class Members, as reflected in the Defendant' records. The mailing and the fairness hearing will be timed so that the Class Members will have not less than 30 days from the date of the mailing to opt-out of the Class, to object to the Settlement and to appear by counsel. The Parties submit that giving notice in this manner satisfies the "best notice practicable" test.

.
16. Class Counsel propose to distribute by first class mail, to the last addresses contained in Defendant' records, notice to all Class Members of class certification and the motion seeking approval of this Settlement. Class Counsel propose to mail the Class Notice to the last known address of each Class Member contained in the Defendant's records and, in the case of any returned envelopes, to such corrected addresses as Class Counsel may be able to obtain from a Class-wide mailing and/or from a national database to which Class Counsel subscribes or as Class Counsel may otherwise obtain. Class Counsel represents that they have been able to obtain corrected addresses from the national database in most instances. In those few instances where they have not obtained a corrected address from the national database, a Class-wide mailing asking Class Members for the current addresses of those individuals not located through the national database has yielded additional corrected addresses.

## THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE AND ADEQUATE TO THE CLASS

17.     This Court has broad discretion in determining whether the proposed settlement should be approved. Settlement of litigation is strongly favored as a matter of public policy. *U.S. Oil & Gas v. Wofson*, 967 F.2d 489, 493 (11th Cir. 1992)(citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

18.     Appellate review of a challenge to the District Court approval of a class action settlement is limited. *See Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999). Courts have developed a common test for settlement approval: whether the settlement is 1) fair adequate and reasonable, and 2) not the product of collusion between the parties. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). There is a strong judicial policy in favor of settlement in order to conserve scarce resources that would otherwise be devoted to protracted litigation. *Bennett v. Behring Corp.*, 737 F. 982, 986 (11th Cir. 1984). The Eleventh Circuit has, however, established the considerations that a district court should take into account when evaluating a settlement. These factors are set in *Bennett*: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and likely duration of the litigation; (5) the substance and amount of opposition to the settlement and (6) the stage of proceedings at which the settlement was achieved. *Ingram et al. v. Coca-Cola,* 200 F.R.D. 685 (N.D.Ga. 2001)(citing *Bennett*, 737 F.2d at 986.) In addition, the judgment of experienced counsel is relevant to approval. Id.

19.     For the reasons discussed above, the proposed Settlement Agreement clearly falls within the range of reasonable litigation possibilities as there is a chance that the Defendant (if

found to be liable) could be hit with a judgment of more than $600,000 and the Class, if unsuccessful, could receive nothing if Defendant prevails on its defenses. As with any litigation, the outcome over the allowance and amount of claims is uncertain and here the Plaintiff Class can realize more than 50% of their Maximum Theoretical WARN claims, before attorney fees. Defendant can cap their exposure at the same amount, in addition to avoiding a trial which would involve significant time and expense for both parties.

20. The Settlement is therefore in the best interest of the parties.

21. Accordingly, the Parties respectfully request the Court to schedule a hearing for the final consideration and approval of the Settlement.

WHEREFORE, the Parties respectfully request that the Court enter the proposed Form of Order, attached hereto as Exhibit C, 1) granting Class Certification for purposes of settlement only; (2) appointing Class Counsel; (3) preliminarily approving the Settlement Agreement between Plaintiff, on his own behalf and on behalf of the Class of similarly situated former employees of the Defendant; (4) approving the form and manner of Notice to Class or the Right to Opt-Out of the Class and to Object to the Proposed Settlement; (5) scheduling a Fairness Hearing for the Final Consideration and approval of the Settlement; and (6) Finally Approving the Settlement.

DATED: January 20, 2009        *s/ Mary E. Olsen*

                                                    LANKENAU & MILLER, LLP
                                                    Stuart J. Miller (SJM 4276)
132 Nassau Street, Suite 423
New York, New York 10038
Tel: 212\ 581-5005

THE GARDNER FIRM, PC
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
J. Cecil Gardner (GARDJ3461)
1119 Government Street
Post Office Drawer 3103
Mobile, AL  36652
Tel: 251\ 433-8100   Fax 251\ 433-8181

Attorneys for Plaintiff and the Proposed Settlement Class


DATED: January 20, 2009        *s/ Rene Gonzalez-LLorens*
Rene Gonzalez-LLorens
Florida Bar No. 0053790
SHUTTS & BOWEN LLP
Attorneys for Defendant
201 South Biscayne Blvd.
1500 Miami Center
Miami, Florida  33131
(305) 347-7337
(305) 347-7837 (Facsimile)
rgl@shutts.com

Attorney for the Defendant


BA2/352088 10/03080